IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

THAI MEDITATION ASS'N OF ALA.,      :
INC., et al,                        :
                                    :
     Plaintiffs,                    :
                                    :
vs.                                 :      CIVIL ACTION 16-0395-CG-M
                                    :
CITY OF MOBILE, ALABAMA,            :
                                    :
     Defendant.                     :
                                    :

REPORT AND RECOMMENDATION

Defendant's Motion to Dismiss and Incorporated Brief (Doc. 18) under Federal Rules of Civil Procedure 8 and 12(b)(6) was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the Court. Plaintiffs have filed a response (Doc. 25) to which Defendant has replied (Doc. 26).  After careful consideration of the record, it is **RECOMMENDED** that the Motion to Dismiss be **GRANTED in part** and **DENIED in part** as follows:

    1.   that the Motion to Dismiss be **GRANTED** as to the facial
         components of Counts I, II, and III, and

    2.   that the Motion to Dismiss be **DENIED** as to Count VII.

FACTUAL AND PROCEDURAL BACKGROUND

On January 19, 2007, Plaintiff Thai Mediation Association of Alabama, Inc., also known as the Meditation Center of Alabama, (hereafter, "the Association") was incorporated under

Alabama law. (Doc. 1 at 5.)  The same year, the Association applied for and received federal tax exemption under 26 U.S.C. 501(c)(3). (*Id.*)  The association was begun for the purpose of providing a meditation center for Buddhists and those interested in learning about Buddhism. (*Id.*)

On July 27, 2007, Plaintiff Sivaporn Nimityongski purchased a house located at 4567 Airport Boulevard, Mobile, Alabama ("the Former Location") for use as the Association's meditation center and the Association began hosting meditative activities there. (*Id.* at 13.)  In 2009, the Association applied for a permit from the City of Mobile Planning Commission to regularize the use of the Former Location as a meditation center, but later withdrew that application in the face of community opposition. (*Id.* at 13-14.)  In 2010, the Association moved its meditation center to its present location in a shopping center located at 3821 Airport Boulevard, Mobile, Alabama ("the Current Location"). (*Id.* at 14.)  Plaintiffs believe that the Current Location in a commercial development is unsuitable for the long-term needs of the Association. (*Id.* at 12.)  Specifically, the Current Location cannot house visiting Buddhist monks and is proximate to busy roads, the noise from which interferes with meditation activities. (*Id.*)

On August 20, 2015, the individual Plaintiffs purchased a 6.7-acre parcel suitable for the Association's needs, located at

2410 Eloong Drive, Mobile, Alabama ("the Proposed Location").
(Doc. 1 at 2, 18-19.)  The property is currently improved with a
single-family residence and a detached garage.  (*Id.* at 16.)
The Proposed Location is located approximately 1,000 feet from
The Church of the Nazarene located on Riverside Drive.  (*Id.*)
Individual Plaintiffs have a lease agreement with the
Association for the Association's use of the property as a
Buddhist meditation center.  (*Id.* at 19.)  The Proposed Location
was purchased only after meetings with officials of the City of
Mobile Planning Department, during which officials informed
Plaintiff that their proposed use was considered a religious
facility and was allowed on the subject property with planning
approval.  (*Id.* at 16-19.)  Following these meetings, Plaintiffs
believed that planning approval would be forthcoming after their
purchase of the property.  (*Id.* at 18.)

On September 11, 2015, Plaintiff Sivaporn Nimityongskul
filed a Subdivision Application with the City of Mobile Planning
Commission seeking Planning approval, Planned Unit Development
("PUD") approval, Subdivision, and a Bulk/Site variance at the
Proposed Location.  (Doc. 1 at 21.)  The application sought to
use the Proposed Location as a residence as well as approval for
the construction of a meditation center.  (*Id.*)  The meditation
center would conduct meditation sessions three times a week with
no more than thirty participants.  (*Id.*)  The proposed

development would consist of a 2,400 square foot mediation center, two 2,000 square foot cottages (consisting of four bedrooms and a common area each) for visiting monks, a 600 square foot restroom facility, and 42 gravel parking spaces. (*Id.* at 21–22.)  The proposed meditation center would consist of a large group meditation room, a small storage area, four private meditation rooms, and an exercise room.  (*Id.* at 21.) In conjunction with the application, the Association submitted copious documentation regarding the religious nature of the group, including their tax-exempt status and their affiliation with the Dhammakaya Association, a Buddhist temple and teaching center headquartered in Pathum Thani, Thailand.  (*Id.* at 24–27.) Planning Commission staff produced a Staff Report recommending denial of the Association's application, based, at least in part, on a determination that the meditation center was not a place of worship.  (*Id.* at 28–29.)  On December 3, 2015, the Planning Commission voted to deny the application for planning approval, without discussion.  (*Id.* at 29.)

On December 17, 2015, Plaintiff Sivaporn Nimityongskul appealed the Planning Commission's decision to the City of Mobile City Council.  (Doc. 1 at 31.)  The City Council heard the appeal at its regular meeting on January 19, 2016, at which time council members discussed whether the proposed facility was religious in nature.  (*Id.* at 32.)  One council member expressed

the opinion that "[t]his is not a religious facility"; another member noted that the Association's articles of incorporation stated that it was formed for a religious purpose. (*Id.* at 32-33.)  The City Council ultimately voted to deny the appeal by a vote of 6-0, with one Council member abstaining. (*Id.* at 35.)

On March 5 and March 25, 2016, the Association held half-day mediation retreats in the home of Plaintiff Sivaporn Nimityongskul, which is the residence located on the Proposed Location. (Doc. 1 at 35-36.)  On May 26, 2016, the City of Mobile filed suit in Mobile County Circuit Court against the Plaintiffs in this action, seeking preliminary and permanent injunctions preventing additional meditation retreats from being held at the Proposed Location. (*Id.* at 36.)  The action was dismissed on July 11, 2016, on the stipulation that the Association would obtain any necessary permits or approvals prior to using the Proposed Location as a meditation center. (*Id.*)

On July 26, 2016, the Plaintiffs filed the instant action, alleging seven counts against the City of Mobile. (*See* Doc. 1.) At issue here are Counts I, II, III, and VII.  (Doc. 18 at 1.) Counts I, II, and III allege that the City of Mobile's land use regulations, both on their face and as applied, violate the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc(a), (b)(2), and (b)(1).  (Doc. 1 at 43-44.)

Count VII alleges that the City of Mobile negligently represented to the Plaintiffs that their development plan would be approved by the Planning Commission and that Plaintiffs purchased the Proposed Location based on this misrepresentation. (*Id.* at 46-48.)  On August 26, 2016, Defendant City of Mobile (hereafter, "Defendant") filed the instant motion seeking dismissal of the facial components[1] of Counts I, II, and III, as well as dismissal of Count VII.

STANDARD OF REVIEW

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must first satisfy the pleading requirements of Rule 8(a)(2), which provides that "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  While Rule 8 establishes a regime of "notice pleading," *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 513-14, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002), it does not eliminate all pleading requirements.

First, the complaint must address all the elements that must be shown in order to support recovery under one or more causes of action.  "At a minimum, notice pleading requires that a complaint contain inferential allegations from which we can

---

[1] Defendant's Motion (Doc. 18) does not address the as-applied components of Counts I, II, and III, and the Court does not take them up here.

identify each of the material elements necessary to sustain a recovery under some viable legal theory." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 960 (11th Cir. 2009) (emphasis and internal quotes omitted).

Pleading elements is necessary, but it is not enough to satisfy Rule 8(a)(2).  The rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" to satisfy that rule. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2009).  In addition, there must be a pleading of facts. Though they need not be detailed, "[f]actual allegations must be enough to raise a right to relief above the speculative level ...." *Id*.  That is, the complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Id*. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'"  *Twombly*, 550 U.S. at 555, 557, 127 S. Ct. at 1965, 1966 (second brackets in original).  But "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678, 129 S. Ct. at 1949.

When considering a *pro se* litigant's allegations, a court gives them a liberal construction holding them to a more lenient standard than those of an attorney. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 595-596, 30 L.Ed.2d 652 (1972).  The court, however, does not have "license . . . to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." *GJR Investments v. County of Escambia, Fla.,* 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010) (relying on *Iqbal*, 556 U.S. 662, 129 S. Ct. 1937).  Furthermore, the court treats as true factual allegations, but it does not treat as true conclusory assertions or a recitation of a cause of action's elements. *Iqbal*, 566 U.S. at 681, 129 S. Ct. at 1951.

When considering whether a complaint states a claim for relief, the Court "should assume, on a case-by-case basis, that well pleaded factual allegations are true and then determine whether they plausibly give rise to an entitlement to relief." *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010).

DISCUSSION

Defendant argues that selected claims in the Complaint are due to be dismissed because they fail to state a claim upon

which relief could be granted.  (Doc. 18 at 2-3.)  Defendant
moves to dismiss the facial challenges present in Counts I, II,
and III, as well as the entirety of Count VII.  (*Id.*)

I. ALLEGATIONS UNDER RLUIPA

Counts I, II, and III of the Complaint allege violations of
the Religious Land Use and Institutionalized Persons Act of 2000
(hereafter, "RLUIPA"; 42 U.S.C. § 2000cc(a), (b)(2), and (b)(1),
respectively).  (Doc. 1 at 43-44.)  Such allegations challenge,
in part, the facial neutrality of the City of Mobile's Zoning
Ordinance (hereafter, "the ZO") in relation to Plaintiffs'
proposed religious land uses.  (*See id. compare* 42 U.S.C. §
2000cc-5(7))  Several parts of the ZO are referenced as relevant
in the Complaint.  (*See id.* at 19-21.)

The ZO divides the City of Mobile into a number of separate
zoning districts.  MOBILE, ALA., CODE § 63-3(A)(1).  The Proposed
Location lies in an "R-1" district.  (Doc. 1 at 16.)  The ZO
describes R-1 districts thusly:

> *R-1 districts: One-family residential districts.* These
> districts are composed of both developed and largely
> undeveloped areas. The developed areas contain mainly
> one-family dwellings and small open areas, usually
> subdivided, where residential development seems likely
> to occur; few two-family and multiple-family dwellings
> are found in these developed areas. It is anticipated
> that most of the large undeveloped areas will
> ultimately be developed for residential use. The
> district regulations are designed to protect the
> residential character of the developed areas by
> prohibiting all commercial activities; to encourage a
> suitable neighborhood environment for family by
> including among the permitted uses such facilities as

> schools and churches; and to preserve the openness of
> the areas by requiring certain minimum yard and area
> standards to be met . . .

MOBILE, ALA., CODE § 64-3(C)(1).  Permitted uses in any given

zoning district are divided into "[u]ses allows by right" and

"[u]ses requiring planning approval."  MOBILE, ALA., CODE § 64-

12(1).

> Uses requiring planning approval . . . are permitted
> in that particular district upon approval of their
> location and site plan by the planning commission as
> being appropriate with regard to transportation and
> access, water supply, waste disposal, fire and police
> protection, and other public facilities; as not
> causing undue traffic congestion or creating a traffic
> hazard; and as being in harmony with the orderly and
> appropriate development of the district in which the
> use is located . . .

MOBILE, ALA., CODE § 64-12(1)(b).

"Church or religious facility: including parish house,

community house and educational buildings . . . " is permitted

in R-1 districts as a use requiring planning approval.  MOBILE,

ALA., CODE § 64-12.  "Convent, monastery" is similarly a use

requiring planning approval in R-1 districts.  *Id.*  A "church"

is defined by the ZO as

> [a] building, together with its accessory buildings
> and uses, where persons regularly assemble for
> religious worship, and which building, together with
> its accessory buildings and uses, is maintained and
> controlled by a religious body organized to sustain
> public worship.

MOBILE, ALA., CODE § 64-2.  The ZO defines an "accessory structure"

[assumed to be identical with the "accessory building[]"

included in the "church" definition"] as "[a] detached

subordinate, located on the same building site with the main
structure, the use of which is incidental to that of the main
structure." *Id.* An "accessory use" is defined as "[a] use
customarily incidental to the principal use of a building site
or to a structure and located upon the same building site with
the principal use." *Id.* The "Definitions" section of the ZO
does not define "religious facility," "parish house,"
"educational buildings," "convent," "monastery," "religious
worship," or "religious body." *Id.* Other uses which are
permitted in R-1 zoning districts, with prior planning approval,
include community centers, recreation centers, outreach
programs, schools, public parks, playgrounds, and recreation
clubs for golf, swimming, and tennis. MOBILE, ALA., CODE § 64-12.

The ZO specifies that

> [a]ny use permitted in any district whether by right,
> with planning approval, or with conditions specified,
> must comply with the requirements of the district in
> which it is located, unless it is approved as a
> planned unit development (PUD) with modifications as
> required by the planning commission, or unless
> variance from such requirements is specifically
> requested and approved by the board of adjustment.

MOBILE, ALA., CODE § 64-12(4). Typically, "a separate building
site it required for each building other than an accessory
building." MOBILE, ALA., CODE § 64-5(A)(1) However, a "planned
unit development" (hereafter, "PUD") is a group of buildings
developed on a single building site and allowed with approval
"to encourage the unified development of tracts of land that are

11

suitable in size, location character for the uses and buildings proposed. *Id.* In a PUD, "the requirement for a separate building site for each building is waived and the land occupied by the [PUD] is considered to be the building site for the group of buildings as a whole." *Id.*

Applications for planning approval are directed to the Planning Commission of the City of Mobile. MOBILE, ALA., CODE § 64-8(C)(1). The ZO outlines the planning approval process following application for a permitted use:

> The planning commission shall receive all applications for planning approval where such approval is required for a permitted use. Within twenty (20) days after the receipt of such application by the planning commission, the zoning administrator shall refer the application, together with his report and recommendation, to the planning commission for its consideration and action. At its next regular meeting, but in any event within forty-five (45) days of the filing of an application for planning approval with the planning commission, the planning commission shall consider such application and approve or disapprove the application; approval may establish conditions and limitations with respect to the site plan. The application, together with the planning commission's approval or disapproval, shall be filed in the office of the planning commission, and the zoning administrator shall notify the applicant of the action of the planning commission on the application. Should any person be aggrieved by the decision of the planning commission on the application for planning approval, such person may appeal such decision by filing written notice of appeal with the planning commission within fifteen (15) days from the date of such decision, and the planning commission shall, within fifteen (15) days after the filing of such notice of appeal, send a transcript of the application and the applicable minutes and record of the action taken by the planning commission to the city council of the City of Mobile, who shall, within fifteen (15)

days after receipt of such transcript by the city
clerk, hold a hearing on said appeal.

MOBILE, ALA., CODE § 64-8(C)(2)(c).

   A. COUNT I: SUBSTANTIAL BURDEN ON RELIGIOUS EXERCISE

   The first count of the Complaint alleges that Defendant

violated 42 U.S.C. § 2000cc(a), saying that

   Defendant[ has] deprived and continue[s] to deprive
   the Plaintiffs of their right to the free exercise of
   religion, as secured by RLUIPA, by imposing and
   implementing land use regulations both on their face
   and as applied in a manner that places a substantial
   burden on the Plaintiffs' religious exercise without
   using the least restrictive means of achieving a
   compelling governmental interest.

(Doc. 1 at 43.)  The relevant statute states that

   (1)  No government shall impose or implement a land
        use regulation in a manner that imposes a
        substantial burden on the religious exercise of a
        person, including a religious assembly or
        institution, unless the government demonstrates
        that imposition of the burden on that person,
        assembly, or institution—
        (A)  is in furtherance of a compelling
             governmental interest; and
        (B)  is the least restrictive means of furthering
             that compelling governmental interest.
   (2)  This subsection applies in any case which—
        (C)  the substantial burden is imposed in the
             implementation of a land use regulation or system
             of land use regulations, under which a government
             makes, or has in place formal or informal
             procedures or practices that permit the
             government to make, individualized assessments of
             the proposed uses for the property involved.

42 U.S.C. § 2000cc(a)

   Defendant argues that the zoning requirements for the

proposed used within an R-1 district do not constitute a

"substantial burden" on religious exercise within the meaning of

42 U.S.C. § 2000cc(a)(1).  (Doc. 18 at 9.)  The RLUIPA does not define "substantial burden" for itself. The Eleventh Circuit Court of Appeals has held that

> . . . exercise of religion is "substantially burdened" if a regulation completely prevents the individual from engaging in religiously mandated activity, or if the regulation requires participation in an activity prohibited by religion . . .

> [A] "substantial burden must place more than an inconvenience on religious exercise; a "substantial burden is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly. Thus, a substantial burden can result from pressure that tends to force adherents to forego religious precepts or from pressure that mandates religious conduct.

*Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004) *citing Cheffer v. Reno*, 55 F.3d 1517, 1522 (11th Cir. 1995).  "[R]easonable 'run of the mill' zoning considerations," such as size, congruity with existing uses, and availability of parking, "do not constitute substantial burdens on religious exercise." *Midrash*, 366 F.3d at 1227 n.11 *citing Lady J. Lingerie, Inc. v. Jacksonville*, 176 F.3d 1258, 1362 (11th Cir. 1999).  The Eleventh Circuit held in *Konikov v. Orange County, Fla.* that a similar ordinance did not impose a substantial burden when it required religious groups to apply for a "special exception" to operate a "religious organization" in a residential area.  410 F.3d 1317, 1323-24 (11th Cir. 2005). The ordinance's requirements were not a substantial burden because they did not "prohibit [a group] from engaging in

14

religious activity" and did not "coerce conformity of a religious adherent's behavior . . ." *Id.* Under such a test, Defendant's ZO, on its face, would not pose a substantial burden to Plaintiffs' religious exercise. *See id.*

Plaintiffs contend that a facial challenge "is not limited to the text of an ordinance" and implore the Court to consider various statements from Planning Commission officials construing the ZO against the Association. (Doc. 25 at 14-15.) Indeed, in evaluating a facial challenge, the Court "must consider [a city's] authoritative constructions of the ordinance, including its own implementation and interpretation of it." *Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123, 131 (1992); *see also Bloedorn v. Grube*, 631 F.3d 1218, 1237 (11th Cir. 2011) ("We consider the actual policies and practices employed by the University, not just the policy's text."). However, the cases cited by Plaintiffs involve established policies or implementing regulations which go beyond a given ordinance's text. *Forsyth Cnty, Ga.*, 505 U.S. at 131; *Bloedorn*, 631 F.3d at 1237; *Am. Target Advert., Inc. v. Giani*, 199 F.3d 1241, 1253 (10th Cir. 2000). In contrast to these cases, Plaintiffs do not cite any past policies of the Defendant that adversely affect religious practice. (*See* Doc. 1 *generally*.) To consider the comments of Defendant officials in the present case as "implementation and interpretation" would risk emptying the "as-applied" challenge

of its meaning.  *See, e.g.*, *Murdock v. Pennsylvania*, 319 U.S. 105 (1943).

Additionally, the cases cited by Plaintiffs closely considered whether or not the established procedures in question were broadly discretionary.  *Forsyth Cnty, Ga.*, 505 U.S. at 131 (in which county administrator had established pattern of arbitrarily setting fees); *Bloedorn*, 631 F.3d at 1237 (in which university did not have unbridled discretion to determine location, time, or length of allowed speech).  The ZO here is not broadly discretionary. It clearly delineates the issues under consideration when a given use's approval is being decided on, such as traffic congestion, waste disposal, and fire and police protection.  MOBILE, ALA., CODE § 64-12(1)(b).  While the ZO employs a category ("church") which is typically used for Christian religious facilities, it gives that term a broad definition encompassing any place of worship.  *See* MOBILE, ALA., CODE § 64-2.

Thus, even when the implementation and interpretation of the ZO are considered, the Plaintiffs cannot show that the ZO imposes a substantial burden on religious exercise on its face. Since a material element of the claim cannot be pleaded, Plaintiff's substantial burden claim necessarily fails.  *See Mack v. City of High Springs*, 486 Fed. App'x 3, 6 (11th Cir. 2012) ("To survive a motion to dismiss under Rule 12(b)(6), the

plaintiff must plead either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.").

B. COUNT II: DISCRIMINATION ON BASIS OF RELIGION

The second count of the Complaint alleges that Defendant violated 42 U.S.C. § 2000cc(b)(2), saying that

> Defendant[ has] deprived and continue[s] to deprive the Plaintiffs of their right to the free exercise of religion, as secured by RLUIPA, by imposing and implementing land use regulations both on their face and as applied in a manner that discriminates against them on the basis of religion and religious denomination.

(Doc. 1 at 44.)  The relevant statute states that

> (b)(2) No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination.

42 U.S.C. § 2000cc(b)(2).

Defendant argues that the ZO shows no religious discrimination on its face because it makes no reference to any particular religion and no particular religion is afforded better treatment than Plaintiffs.  (Doc. 18 at 11.)  Defendants contends that the planning approval requirement for the meditation center "is in no way unusual, as churches or religious facilities as well as other nonreligious assemblies must seek planning approval . . . in all five residential districts[.]"  (*Id.*)  Plaintiff responds that the ZO shows its preference for "other religious denominations that do not

emphasize meditation" through its use of terms such as "church,"
"religious facilities," "parish house," "community house,"
"educational buildings," "convent," and "monastery." (Doc. 25
at 21.) Convents and monasteries, of whatever religious
denomination, are historically associated with contemplative
exercises similar to or identical with that espoused by the
Plaintiffs. *See, e.g., Sacred Heart Acad. of Galveston v.
Karsch*, 122 S.W.2d 416, 417 (Tenn. 1938). As discussed above,
the ZO defines the term "church" to include any established
place of worship. Plaintiff agrees that this term is "defined
broadly" in the ZO. (Doc. 25 at 20-21.) "Educational
buildings" can certainly be used by any religious adherents.

Since the ZO does not make reference to any particular
religion or give any religion special treatment, and since the
terms employed by the ZO are neutral as to the religious use
envisioned by the Plaintiffs, the ZO cannot be said to be
religiously discriminatory on its face. *See* 42 U.S.C. §
2000cc(b)(2). Since a material element of the claim cannot be
pleaded, Plaintiff's discrimination claim necessarily fails.
*See Mack*, 486 Fed. App'x 3, 6.

C. Count III: TREATMENT ON LESS THAN EQUAL TERMS

The third count of the Complaint alleges that Defendant
violated 42 U.S.C. § 2000cc(b)(1), saying that

> Defendant[ has] deprived and continue[s] to deprive
> the Plaintiffs of their right to the free exercise of

religion, as secured by RLUIPA, by imposing and
implementing land use regulations both on their face
and as applied in a manner that treats them on terms
that are less than equal to nonreligious assembly and
institutional land uses.

(Doc. 1 at 44.)   The relevant statute states that

> (b)(1) No government shall impose or implement a land
> use regulation in a manner that treats a
> religious assembly or institution on less than
> equal terms with a nonreligious assembly or
> institution.

42 U.S.C. § 2000cc(b)(1).

> There are four elements of an Equal Terms violation:
> (1) the plaintiff must be a religious assembly or
> institution, (2) subject to a land use regulation,
> that (3) treats the religious assembly on less than
> equal terms, with (4) a nonreligious assembly or
> institution.

*Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cnty.*, 450 F.3d 1295, 1307-08 (11th Cir. 2006).  A plaintiff "bears the initial burden of 'produc[ing] prima facie evidence to support a claim alleging a[n Equal Terms] violation." *Id.* citing 42 U.S.C. § 2000-2(b).

The RLUIPA equal terms provision requires equal treatment of religious and nonreligious assemblies and institutions, not special treatment for religious groups.  *Primera Iglesia*, 450 F.3d at 1313.

> A zoning law is not neutral or generally applicable if
> it treats similarly situated secular and religious
> assemblies differently because such unequal treatment
> indicates the ordinance improperly targets the
> religious character of an assembly.

*Midrash*, 366 F.3d at 1232.  Eleventh Circuit precedent thus calls for comparing the treatment of religious and nonreligious assemblies and institutions.  *Id.*  The RLUIPA does not define "assembly" or "institution" for itself.  Rather, the Eleventh Circuit defines "assembly" as

> 'a company of persons collected together in one place [usually] and usually for some common purpose (as deliberation and legislation, worship, or social entertainment)' . . . or '[a] group of persons organized and united for some common purpose.'

*Midrash*, 366 F.3d at 1230-31 *citing* WEBSTER'S 3D NEW INT'L UNABRIDGED DICT. 131 (1993) *and* BLACK'S LAW DICT. 111 (7th ed. 1999).

Similarly, the Eleventh Circuit defines "institution" as

> 'an established society or corporation: an establishment or foundation esp. of a public character,' . . . or '[a]n established organization, esp. one of a public character'

*Id.*

Defendant argues that, on its face, the ZO treats the proposed use of a " 'Buddhist meditation center' at least equal to, if not superior to, similar nonreligious assemblies and institutions." (Doc. 18 at 9.)  Plaintiffs reply that a number of nonreligious uses are allowed in R-1 zoning districts with planning approval, while the Association's proposed use has not been allowed since it was denied approval by the Planning Commission.  (Doc. 25 at 22-23.)  The nonreligious uses allowed with planning approval that Plaintiffs point to include cemeteries, community centers, libraries, museums, schools,

sports clubs, and zoos.  (*Id. citing* MOBILE, ALA., CODE § 64-12.)
Plaintiffs argue that these uses constitute nonreligious
assemblies and institutions which are treated on better than
equal terms when compared to the proposed use.  *Id.*  Again,
Plaintiffs ask the Court to go beyond the face of the relevant
ordinances, along with their implementation and interpretation
through established practice and policies, when considering the
pleading of a facial challenge.  (*See* Doc. 25 at 22-23.)  The
denial of planning approval for the proposed use is not relevant
to whether the ordinance's terms are equal on their face.
Consider the Planning Commission's denial in the instant case
when weighing a facial challenge would risk emptying the "as-
applied" challenge of its meaning.  *See, e.g., Murdock v.
Pennsylvania*, 319 U.S. 105 (1943).

Instead, the undersigned considers the text of the ZO and
the implementation and interpretation of that text through
established practice.  The nonreligious uses that Plaintiffs
point to are only allowed in R-1 zoning districts with prior
planning approval.  MOBILE, ALA., CODE § 64-12.  Likewise, a
"church or religious facility" is allowed in an R-1 zoning
district only with prior planning approval.  *Id.*  The ZO
subjects all such uses to the same approval process considering
traffic congestion, water supply, waste disposal, and fire and
police protection.  MOBILE, ALA., CODE § 64-12(1)(b).

Since the ZO is facially neutral as to religious and nonreligious uses requiring planning approval in R-1 zoning districts, it cannot be said to treat a religious assembly on "less than equal terms." *See* 42 U.S.C. § 2000cc(b)(1). Since a material element of the claim cannot be pleaded, Plaintiff's equal terms claim necessarily fails. *See Mack*, 486 Fed. App'x 3, 6.

## II. ALLEGATION OF NEGLIGENT MISREPRESENTATION

Count VII of the Complaint alleges an Alabama state-law claim of negligent misrepresentation by Defendant. (Doc. 1 at 46-48.) Under Alabama law, "[t]he elements of a misrepresentation claim are 1) a misrepresentation of material fact, 2) made willfully to deceive, recklessly, without knowledge, or mistakenly, 3) which was reasonably relied on by the plaintiff under the circumstances, and 4) which caused damage as a proximate consequence." *Bryant Bank v. Talmage Kirkland & Co., Inc.*, 155 So.3d 231, 238 (Ala. 2014). It is differentiated from a promissory fraud claim in that it involves "an existing material fact" rather than an "act promised." *City of Prattville v. Post*, 831 So.2d 622, 628-29 (Ala. 2002).

Plaintiffs allege that Defendant, through its agents and employees, negligently misrepresented that "[z]oning [c]lassification" of the Proposed Location. (Doc. 1 at 46.) Plaintiffs plead that

> [p]rior to purchase [of the Proposed Location],
> Plaintiff Sivaporn Nimityongskul and realtor, Bill
> Youngblood, met with city zoning official Bert Hoffman
> and inquired as to whether the proposed mediation
> center would be allowed on the subject Property which
> is zoned single family residential. They were advised
> by Mr. Hoffman that a mediation center was allowed in
> a single family residential zone with planning
> approval. This was confirmed in an email from zoning
> official Bert Hoffman dated April 27, 2015 to the
> planning staff. It was confirmed again on July 21,
> 2015 via email from Mr. Hoffman to Steve Fisher, an
> engineer employed by Plaintiffs to prepare a site plan
> for the mediation center which would meet the
> conditions suggested by Planning Commission Staff for
> planning approval . . . Having been assured that a
> mediation center was allowed on the Property *with
> planning approval*, Plaintiffs, on August 20, 2015,
> closed on their purchase of the property.

(emphasis added; *Id.*)  Plaintiff allege that Mr. Hoffman

informed them that the "Planning [Commission] will treat this

[proposed use] as a place of worship." (*Id.* at 16-17.) Based on

these statements, Plaintiffs applied for use approval through

the Planning Commission, with appeal to the Mobile City Council.

(Doc. 1 at 21-35.)  Contrary to Mr. Hoffman's statements, the

City did not treat the proposed use as a religious facility, but

as a commercial use that was inappropriate to a residential

area.  (Doc. 1 at 32, 35.)  A prospective commercial use would

have been better served by seeking a use variance through the

Board of Adjustment; however, Plaintiffs allege that they sought

planning use approval instead based on the statements of

Planning Commission representatives.  (Doc. 1 at 15-17, 27-28.)

Defendant argues that the negligent misrepresentation count

should be dismissed because it lacks the critical element of

reasonable reliance.  (Doc. 18 at 15.)  Defendant insists that
Plaintiffs could not have relied on Defendant's statements,
since Defendant stated that planning approval would be needed
and Plaintiffs knew that they had not yet begun the planning
approval process when they closed on the Proposed Location.
(*Id.*)  However, Defendant's argument assumes that the purchase
of the Proposed Location was the only action in which Plaintiffs
relied on the statements of the Defendant.  (*Id.*)  Plaintiff
also relied on Defendant's statements regarding the approval
process when they filed the application for planning approval,
rather than seeking a use variance through the Board of
Adjustment.  (Doc. 1 at 46-47.)  The Plaintiffs have alleged
that the Defendant mistakenly or recklessly represented to the
Plaintiffs that the planning approval application was the
correct process by which to receive permission for use of the
Proposed Location, and that Plaintiff relied on that
misrepresentation to their detriment in starting the planning
approval process rather than the use variance process.  (*Id.*)
Under the interpretation of the Planning Commission and the City
Council, the correct process for their use (which Defendant
ultimately considered commercial) would have been to apply for a
use variance.  (Doc. 1 at 46-47.)  Thus, they have alleged the
elements necessary for a negligent misrepresentation claim.  *See*
*Bryant Bank*, 155 So.3d at 238 (Ala. 2014).

24

CONCLUSION

After careful consideration of the record and for the reasons stated herein above, it is **RECOMMENDED** that the Motion to Dismiss be **GRANTED in part** and **DENIED in part** as follows:

3.    that the Motion to Dismiss be **GRANTED** as to the facial components of Counts I, II, and III, and

that the Motion to Dismiss be **DENIED** as to Count VII.

NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. L.R. 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th

Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this 12th day of October, 2016.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE